## Rostosky Appeal

*Robert Shostak*, for Commonwealth.

*Paul N. Barna*, of *Barna & Barna*, for appellant.

*William Jon McCormick*, for Intervenor, Borough of Bentleyville.

*Jess D. Costa*, for Intervenor, Bentleyville Water Authority.

COHEN, Member, June 26, 1974.—This is an appeal by Joseph Rostosky, d/b/a Joseph Rostosky Coal Company, from the action of the Department of Environmental Resources in denying his application to strip a tract of land approximately 16-1/3 acres in Somerset Township, Washington County, situated along the north side of Interstate Route 70 and the

west side of Township Route 818 to a point one-half mile north of the junction of the two highways. The issue in this case is whether the Department of Environmental Resources rightfully refused to grant appellant's application for a mine drainage permit.

## FINDINGS OF FACT

1. Appellant in this case is Joseph Rostosky, an individual, d/b/a Joseph Rostosky Coal Company. Appellant's address is R. D. 3, Box 112, Monongahela, Pa.

2. Appellee in this case is the Pennsylvania Department of Environmental Resources.

3. Intervenors in this case are the Borough of Bentleyville, Washington County, and the Bentleyville Water Authority.

4. On or about September 20, 1971, appellant, Joseph Rostosky, made application to the Pennsylvania Department of Environmental Resources (hereinafter "the department") for a permit to discharge industrial wastes and mine drainage pursuant to the provisions of The Clean Streams Law, Act of June 22, 1937, P. L. 1987, as amended, 35 PS §691.1, et seq.

5. In his application, appellant proposed to strip mine approximately 16-1/3 acres of the Waynesburg seam of coal in Somerset Township, Washington County, located along the north side of Interstate Highway 70 and along the west side of Township Route 818 to a point one-half mile north of the junction of these two highways. The application proposed that, after treatment, the discharge from the operation would drain into the north branch of Pigeon Creek, tributary to Pigeon Creek which flows into the Monongahela River. Although application states appellant will strip mine approximately 16-1/3 acres, he testified

that he proposed to strip mine approximately 24 acres of coal.

6. The proposed stripping operation of appellant is approximately 300 feet from the Bentleyville Reservoir, formerly a source of water supply to the Borough of Bentleyville, but no longer so.

7. The erosion and sedimentation plans, prepared on behalf of appellant in connection with his application for a mine drainage permit by Dr. Marlin L. Sheridan, a registered professional engineer in the Commonwealth of Pennsylvania and an expert in the field of sedimentation and erosion control, meet the requirements of departmental regulations for sedimentation and erosion control plans.

8. The North Branch of Pigeon Creek and the Bentleyville Reservoir are non-acid waters of the Commonwealth and sustain aquatic life.

9. The Pennsylvania Fish Commission stocks the Bentleyville Reservoir with fish.

10. The Pennsylvania Fish Commission does not stock the North Branch of Pigeon Creek, but has made a survey in order to determine whether this body of water should be stocked with fish.

11. The proposed strip mining activity of appellant does not threaten any source of public water supply for the Borough of Bentleyville.

12. The Bentleyville Water Authority does not now and, in all probability, will never in the foreseeable future utilize the Bentleyville Reservoir as a source of public water supply for the residents of the Borough of Bentleyville.

13. The Bentleyville Reservoir is currently being used for recreational fishing by residents of the borough and others in the vicinity.

14. Aside from fishing, there is no other generally permitted recreational use of the Bentleyville Reservoir.

15. The plan of drainage set forth in appellant's application for a mine drainage permit was designed to treat acid mine drainage resulting from the proposed strip mining operation while said operation was in progress.

16. Nothing in appellant's application for a mine drainage permit specifically addressed itself to the problem of the possibility of contamination of ground waters by acid-bearing materials.

17. The overburden on the tract of land covered by appellant's application contains pyritic material which, when coming into contact with oxygen and water, will cause acid.

18. The disturbing of the overburden as a consequence of strip mining exposes more pyritic material to oxidation than would be the case were the earth undisturbed.

19. The contour method of backfilling, by which appellant proposes to fill the land once the coal is extracted, will result in exposing approximately 24 acres of overburden containing pyritic material to the process of oxidation and may result in substantial amounts of acid water reaching the North Branch of Pigeon Creek and the Bentleyville Reservoir through the contamination of ground waters.

20. The "dip" of the seam of coal (and of other strata) on appellant's tract of land is such that there is a distinct possibility that contamination of ground waters would reach either the North Branch of Pigeon Creek or the Bentleyville Reservoir in such quantities as to raise substantially the acidity of these waters

and kill substantial amounts of fish and other aquatic life.

21. The department, at the time of its denial of appellant's application, had no facts before it upon which to determine whether the proposed strip mining pursuant to the application would cause pollution of the waters of the Commonwealth.

22. The basis upon which the department denied appellant's application for a mine drainage permit was solely that the Borough of Bentleyville and the Bentleyville Water Authority protested to the department the issuance of the permit to the appellant.

23. Initial review of the permit application by the department indicated probable approval of the application.

24. At the time of the initial hearing in this matter on January 11, 1974, the department had no information in its possession which would bear upon the issue of the contamination by acid of ground waters by the proposed stripping operation of appellant.

25. All the evidence relating to contamination by acid of ground waters due to appellant's proposed operation was adduced by the department and the intervenors subsequent to the first hearing in this matter.

26. At no time prior to the second hearing in this matter on February 20, 1974, was appellant informed, either by the department or by the intervenors, that the main concern in the case was the possibility of ground water pollution reaching the North Branch of Pigeon Creek or the Bentleyville Reservoir.

## DISCUSSION

While it is clear that the department could have denied appellant's permit on the basis of the evidence

presented at the hearings in this case, the board is concerned that the department acted in this matter in such a manner as to be repugnant and offensive to basic elements of good faith and fairness that is the hallmark of the American constitutional system. It is obvious by the record in this case that the department took inordinately long in acting upon the application and, when it did, it did not specify with particularity wherein the application was deficient or in what manner the proposed strip mining of appellant would cause pollution of the waters of the Commonwealth. Whatever review there was by the department prior to the denial of appellant's permit application, tended to support the issuance of a permit if some modifications were made in the application. On April 17, 1973, William Cherry, Mine Conservation Inspector, 32nd District, for the Department of Environmental Resources, rendered a field engineer's report on appellant's application for a mine drainage permit. In this report, Mr. Cherry made the following remark:

"The conditions as stated in the Application would be sufficient to prevent pollution except that another condition must be added, the diversion ditch below the toe of the spoils along the Reservoir side must have a basin at the end of it to settle out any silt or solids before going into the receiving stream."

It is clear from the foregoing remark of Mr. Cherry that with an amended plan of drainage that would provide for a settling basin at the end of the diversion ditch to remove silt or solids before going into the receiving stream, the permit was likely to have been granted.

Not until the second hearing in this matter, on February 20, 1974, was there any suggestion that there was a ground water pollution problem with re-

gard to appellant's application. As a matter of fact, the record indicates that none of the evidence gathered relating to the problem of ground water pollution was collected prior to the initial hearing in this case on January 11, 1974. Therefore, it conclusively appears that when the department denied appellant a mine drainage permit it had no facts in its possession to justify the conclusion that the proposed strip mining activity of appellant would pollute ground waters and thereby threaten the north branch of Pigeon Creek and/or the Bentleyville Reservoir.

However, the board cannot ignore the fact that the evidence produced by the department and the intervenors at the hearing on February 20, 1974, if available to the department prior to the denial of appellant's application, would have been legally sufficient to deny appellant a mine drainage permit. Although, when taken, the action of the department was not based upon substantial evidence, that fact alone would be insufficient to order the granting of appellant's application for a permit under the facts as they now appear.

Under section 1921-A of the Administrative Code of 1929, Act of April 9, 1929, P. L. 177, as amended, 71 PS §510-21, this board is given the authority to ". . . issue adjudications heretofore vested in the several persons, departments, boards and commissions set forth in section 1901-A of this act." Hence, this board became the successor of the Sanitary Water Board insofar as its authority to render adjudications is concerned. Prior to the abolition of the Sanitary Water Board by the Act of December 3, 1970, P. L. 834, No. 267, section 25, that board had the authority to hear appeals by aggrieved parties from departmental actions by virtue of section 7 of The Clean Streams Law, Act of June 22, 1937, P. L. 1987, as amended, 35 PS

§691.1, et seq. None of the aforementioned acts sets forth a standard of review for either this board or the now defunct Sanitary Water Board to follow, except that they provide that the adjudicatory functions of the bodies in question are subject to the provisions of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, as amended, 71 PS §1710.1, et seq.

The Administrative Agency Law, section 44, *supra,* provides, in pertinent part, as follows:

"After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five inclusive of this act have been violated in the proceeding before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence. If the adjudication is not affirmed, the court may set aside or modify it, in whole, or in part, or may remand the proceeding to the agency for further disposition in accordance with the order of the court."

Inasmuch as it is the adjudications of this board that are reviewable under the Administrative Agency Law, supra., and not the actions of the department it is clear that the substantial evidence rule applies to this board's adjudications and not the actions of the department. Thus, while the department may have taken action in such a manner as to rebut the normal presumption of validity of departmental action, nevertheless, the evidence on this record would not justify the granting of the permit in question. Neither would appellant have been entitled to a permit, even if the evidence relating to ground water pollution were not in the record. For example, appellant's application states that approximately 16-1/3

acres were to be mined whereas the record indicates that he intended to mine approximately 24 acres. Moreover, there are other discrepancies between the application and the record which make it impossible to justify the ordering of the department to issue a permit upon the application in question. It required amendment and an evaluation of the amendments by the department.

Because applicable principles of law would not justify the issuance of the permit in this case, the board cannot sustain the appeal of Joseph Rostosky, the appellant in this case. However, nothing in this adjudication should give the department any solace. It is only our concern for the environmental impact of the granting of a permit based on the application of Rostosky that precludes this board from upholding the appeal. To reiterate what we have said above, the actions of the department in this case can only be described in derogatory terms. They reflect a predisposition on the part of the department to ignore elementary principles of justice and fair play that alone give governmental action the attributes of moral, as well as legal, sanction. There is no excuse on the record for the delay occasioned in this case. Nor has the board been provided with any reason which would justify the department in not making an evaluation of the application prior to action to justify its decision, especially given the long time between the filing of the application and the ultimate denial in this case. Furthermore, the notice of denial of the application did not state with particularity the reasons for the denial. It merely asserted in general terms that the operation would cause pollution of the waters of the Commonwealth. It gave no inkling to the applicant why this would be so. Perhaps it did not do this be-

cause at the time the denial was given, the department had no facts before it by which it could justify its action.

Because of the gross improprieties by the department in this case, the board takes this occasion to admonish the department in the strongest possible language and, if the department continues to act in this fashion and such facts become a matter of record before this board, we will not hesitate to sustain an appeal even though the action might otherwise have been upheld. There would be no other way, if the department persists in the type of action taken in this case, to chastise it for not following those basic principles of American government enunciated in the Federal Bill of Rights and the Declaration of Rights of the Commonwealth of Pennsylvania.

The board would urge the department that if applicant submits a fresh application, the department will review it expeditiously and act on it in a fair and responsible manner consistent with law.

## CONCLUSIONS OF LAW

1. The board has jurisdiction to decide the subject matter of this appeal.

2. The Department of Environmental Resources had no basis as of May 21, 1973, the date of its denial of appellant's application for a mine drainage permit, to determine whether the application ought to be denied or granted.

3. Even though the department may have acted unwarrantedly in reviewing appellant's application for a permit, appellant has not sustained his burden of proof to entitle him to the issuance of a mine drainage permit.

684

## ORDER

And now, this 26th day of June, 1974, it is hereby ordered that the department's action in denying appellant, Joseph Rostosky, a mine drainage permit pursuant to Application No. 3271BSM36, is hereby sustained and the appeal is hereby dismissed.